861 F.2d 264
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David Rhodes HOSKINS, Petitioner-Appellee,
v.
Larry HUFFMAN, Warden, Attorney General of the State of
Virginia, Respondents- Appellants.
 No. 87-7761.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1988.
Decided Sept. 22, 1988.
Rehearing and Rehearing In Banc Denied Dec. 21, 1988.
 
 Linwood Theodore Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General on brief) for appellant.
 Gerald Thomas Zerkin (Gerald T. Zerkin & Associates on brief) for appellee.
 Before WIDENER, MURNAGHAN, and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge.
 
 
 1
 Larry Huffman, the warden of the Staunton Correctional Center in Staunton, Virginia, appeals from a judgment of a United States Magistrate[1] granting David R. Hoskins' petition for a writ of habeas corpus and requiring that he be released from custody unless prosecuted again by the State of Virginia within a specified time. The magistrate granted the writ based on his finding that Hoskins' conviction was tainted by the admission of statements Hoskins made during a custodial interrogation in which his sixth amendment right to counsel was violated.[2] Huffman contends that the magistrate erred in finding that Hoskins had requested an attorney prior to talking with arresting officers or, alternatively, in failing to find that Hoskins waived his right to have an attorney present during the conversation. He also challenges the denial of his motion to dismiss the petition as an abuse of the writ. Agreeing that Hoskins waived his right to an attorney before making the admission to the officers that was used against him at trial, we reverse.
 
 
 2
 Hoskins was convicted in 1982, after a state jury trial in Virginia, of the attempted murder of Mae Lang, a state magistrate of Warren County, Virginia. The evidence at trial established that Hoskins previously had made a threatening remark to Magistrate Lang after she refused to reduce his bond when he appeared before her in connection with a state prosecution. Lang's residence was situated near the top of a very steep hill with a tortuous descent. One night, the front brake lines of both of Lang's passenger vehicles were cut and the brakes made inoperative. Fortunately, she discovered the sabotage before attempting to drive down the hill. Investigators later found Hoskins' fingerprints on the front fender of one of the vehicles. After his arrest, Hoskins wrote Lang two letters denying culpability, but offering to pay for the damage to the cars. In one of the letters, he admitted having been on Lang's property, but stated that he was looking for his lost cat. He also made this admission at trial, but maintained his story that he had been searching for his lost cat.
 
 
 3
 Shortly after his arrest but before he spoke with an attorney, Hoskins discussed the charges against him with the arresting officers. He denied to the two arresting officers that he had sabotaged the Lang vehicles and expressed surprise at his arrest, but admitted having been on the Lang property. The officers testified to those statements at Hoskins' trial, and their testimony repeating Hoskins' admission of having been on the Lang property forms the basis for Hoskins' petition for a writ of habeas corpus. Hoskins asserts that he made the statements during custodial interrogation after he had expressed his desire to speak with an attorney but before he had been permitted to do so. He asserts that the admission of the statements against him violated his rights guaranteed by the sixth amendment to the United States Constitution.
 
 
 4
 In response to Huffman's motion, the magistrate initially conducted an evidentiary hearing solely on the issue whether the petition was an abuse of the writ under 28 U.S.C. Sec. 2254 rule 9(b). The magistrate heard testimony from Hoskins and from his previous attorney and determined that this third petition was not an abuse of the writ. He went on to consider the petition on the merits.[3]
 
 
 5
 Hoskins previously had raised his sixth amendment claim in a suppression motion prior to his state trial. The state court held an evidentiary hearing before denying the petition. The parties agreed that the record of the state proceeding contained the relevant evidence, and the magistrate evaluated Hoskins' petition on the basis of that record without hearing additional evidence.
 
 
 6
 The facts are largely uncontroverted. Sheriff Armentrout and County Investigator Chapman arrested Hoskins in his home following the issuance of a felony indictment by a Warren County grand jury. While the officers transported Hoskins to the sheriff's office and during the time required to process his arrest, Hoskins bombarded the officers with questions concerning the charges against him. Investigator Chapman testified at the suppression hearing:
 
 
 7
 During the whole time I was processing Mr. Hoskins, he kept demanding to know the circumstances surrounding this case, the charges. He kept demanding to know how many witnesses I had, what physical evidence I had. And, I explained to him that as soon as I finished processing him, that I would sit down and talk with him.
 
 He went on to state:
 
 8
 Mr. Hoskins was very talkative. He demanded to know, during the whole time, from when we placed him under arrest, demanded to know did I have any eye witnesses and what physical evidence I had against him. How many eye witnesses I had. He made statements that I dreamed up this charge and that this would kill his family.
 
 
 9
 He made the statement that he would take a polygraph test. He was very talkative, during the whole time.
 
 
 10
 The detectives responded to Hoskins' repeated inquiries by informing him that they would be willing to discuss the circumstances of his arrest only after they completed processing the necessary paperwork. Sheriff Armentrout testified:
 
 
 11
 Through the whole discussion and prior to coming to the office and at the office, he was told that we would discuss the thing after we do the processing and get all the paperwork out of the way. We wouldn't bring anything out to him until we had finished the processing.
 
 
 12
 At some point during the processing, Hoskins said, "I think I want to call an attorney." The officers did not permit Hoskins to contact an attorney at the time he made the request. Instead, Investigator Chapman replied "We want to finish this processing before we do anything else."
 
 
 13
 The conversation in which Hoskins made the admissions occurred approximately one hour after the officers arrested him at his residence. Uncontested testimony established that during that relatively short time Hoskins was read his Miranda rights, got his clothing together, secured his trailer (turning off lights and appliances and locking the doors), walked with the officers to his own car to lock it, then walked down a hill to where the sheriff's car was parked, and was transported to the sheriff's office. The sheriff estimated that the trip from the mobile home to the sheriff's office took from 20 to 30 minutes. Once he arrived at the sheriff's office, he was fingerprinted and formal booking information was recorded before the conversations resulting in the admission took place.
 
 
 14
 After the officers finished processing Hoskins' arrest, the conversation in controversy ensued. The officers asked Hoskins if he understood the rights that they had read to him earlier, and he responded, "Yes, I definitely understand my rights." The officers did not ask Hoskins whether he wanted to speak to an attorney before speaking with them. Investigator Chapman then started to respond to the inquiries Hoskins had been making since his arrest. He began his explanation, stating, "Okay. You want to know that is going on. The reason we are getting ... have brought these charges is...." At this point, Chapman apparently tried to focus the nature of the complaint against Hoskins. Chapman's precise language cannot be discerned from the testimony. As related by Sheriff Armentrout, however, Chapman either asked, "Do you know where Magistrate Lang lives?" or stated, "At Magistrate Lang's home, her two vehicles were tampered with and an attempt was made on her life." Chapman then continued to describe the nature of the charges. Hoskins responded to some of Chapman's statements and a conversation resulted. Armentrout testified that
 
 
 15
 in that conversation, he would bring out statements that he was at that house ... Mainly, it was a discussion rather than any question and answering. Chapman advised him, basically, what we could advise him of what we had. And then, he started making statements about why he was there and when he was there.
 
 
 16
 During the conversation, Hoskins made some comments in response to statements by the officers and others in response to direct questions. Whether the challenged admissions were made in response to a question or gratuitously is not clear from the record.
 
 
 17
 Hoskins argues that admission of statements he made during this exchange with the officers violated his sixth amendment rights because the discussion took place after he had asked for an attorney but before he was permitted to speak with one. He relies on Edwards v. Arizona in which the Supreme Court held that, once a person in custody has requested an attorney, all interrogation must cease until counsel is provided. 451 U.S. 477, 485 (1981). The Supreme Court also indicated in Edwards, however, that the prohibition against questioning of an accused who invokes his right to counsel only remains in effect "unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. The prosecution bears "a heavy burden ... to demonstrate that the defendant knowingly and intelligently waived ..." his right to retained or appointed counsel. North Carolina v. Butler, 441 U.S. 369, 372-73 (1979) (quoting Miranda v. Arizona, 384 U.S. 436, 475 (1966)). In our view, the state met that burden in this case. We agree with the magistrate that Hoskins' statement that he wanted to speak with an attorney was sufficient under Edwards to invoke the protection of the sixth amendment. We are persuaded, however, that Hoskins surrendered the right to be free from questioning by initiating later conversation with the officers.
 
 
 18
 In Oregon v. Bradshaw, the Supreme Court held police questioning after the defendant had invoked his right to counsel was permissible because the defendant had initiated conversation by asking, "Well, what is going to happen to me now?" 462 U.S. 1039, 1045 (1983). The Court stated that "the respondent's question ... evinced a willingness and a desire for a generalized discussion about the investigation." Id. at 1045-46. Hoskins' behavior is a far more apparent instance of an accused initiating conversation. Sheriff Armentrout testified that Hoskins' processing only took approximately fifteen minutes. It is uncontroverted that during this time Hoskins continually chattered, probed, and professed surprise and chagrin at his arrest and asked to be apprised of the attendant circumstances. The officers maintained silence during the entire harangue until after processing was completed and then told Hoskins, in effect, that they were ready to answer his questions. Hoskins "evinced a willingness and a desire"--indeed demanded--to discuss his case with the officers, and any statements he made during the ensuing discussion, whether or not they were in response to questions asked by the officers, were properly admissible.
 
 
 19
 In view of the above, the judgment of the magistrate is reversed, and the case remanded with instructions to dismiss the habeas corpus petition.
 
 
 20
 REVERSED AND REMANDED, WITH INSTRUCTIONS.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 21
 Arizona v. Roberson, 108 S.Ct. 2093 (1988), decided after we heard oral argument in the present case, is the Supreme Court's latest pronouncement on the law as it regards the admissibility of uncounseled statements made following invocation of the right to counsel. While Roberson involved a facet of that law different from the case at bar, it provided a compendium of the law in the area. For purposes of the present case, Roberson made clear that Edwards v. Arizona, 451 U.S. 477 (1981), established a bright-line, prophylactic rule, viz., "after a person in custody has expressed his desire to deal with the police only through counsel, he 'is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' " Roberson, 108 S.Ct. at 2098 (quoting Edwards, 451 U.S. at 484-85). The holding of Roberson clarified that the bright-line rule applies to conversations regarding crimes other than those from which the custody arose. When those conversations are not "initiated" by the person in custody, the sixth amendment of the Constitution is violated and the prophylactic rule of Miranda v. Arizona, 384 U.S. 436 (1966), requires that statements so obtained be suppressed. Roberson, 108 S.Ct. at 2100-01.
 
 
 22
 Thus, in the present case, unless Hoskins initiated the relevant conversations their admission into evidence at his trial was error. Judge Sprouse's opinion concludes that Hoskins initiated them. I disagree.
 
 
 23
 While the Supreme Court has stated a desire for their not to develop a "superstructure of legal refinements around the word 'initiation' in this context," Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983) (Rehnquist, J., plurality opinion), such a superstructure necessarily will develop given the contours of the sixth amendment right described by Edwards, Bradshaw, and Roberson. Once a suspect invokes a right to counsel and uncounseled statements subsequently follow, the issue of "initiation" becomes paramount given the per se rule of Edwards and its progeny. The issue of "initiation" is the principal one of the present case.
 
 
 24
 The magistrate concluded that the conversation and conduct occurring after Hoskins was processed were police initiated. The magistrate reached his conclusion following a review of the state court record. Judge Sprouse's opinion apparently makes a de novo review of the magistrate's decision as to who initiated the conversation, rather than employing a more deferential standard of review. Determination of who initiated a conversation for these purposes is a mixed question of law and fact, much like the determination of voluntariness as it regards confessions. See Miller v. Fenton, 474 U.S. 104, 116-17 (1985).[1] Because determination of who "initiated" a conversation is a mixed question and because in the present case the magistrate took no testimony regarding the issue, I agree that a de novo review is proper. However, I would conclude that Hoskins did not initiate the conversations in issue. My view coincides with that of the magistrate and I adopt his conclusion as mine:
 
 
 25
 To this court, what occurred after processing had all the trappings of what experience teaches was an interrogation. It is true that petitioner wished to be told of the evidence against him, a natural reaction on the part of an accused especially one whose arrest could, and did, trigger a parole violation. However, that is a far cry from the question-answer style of investigation that typifies police interrogation. On that point, the record is repleat [sic] with references to questions being asked by the arresting officers beginning with the very point when processing ended. There appears to have been no break in time between processing and "interview." Chapman's unequivocal responses to defense counsel's examination convinces this court that the arresting officers seized upon an opportunity to conduct an investigation by interrogation, even though counsel had been requested by petitioner and promised by Chapman. Whether those officers thought they were treading on constitutionally safe waters or whether they were taking a calculated risk in seizing the opportunity to garner evidence from petitioner before counsel entered the scene, the court need not determine. Neither the motives of the arresting officers, whether subjectively or objectively assessed, nor other factors such as the seriousness of the crime with which the petitioner was charged or the impact this court's decision has in his conviction thereof, play a role in the Edwards, per se, analysis.
 
 
 26
 I would also add that I find significant the facts: (1) that a significant lapse occurred between Hoskins' asking and the officers' answering the questions, (2) that Hoskins requested counsel sometime during that lapse, (3) that after the request for counsel, Chapman told Hoskins that "when I finished processing him, I would let him make a phone call and he could talk to his attorney," (4) that the officers did not, after processing, reference their earlier statement regarding calling a lawyer, or ask Hoskins whether he wanted to speak to an attorney before they "answered" his questions.
 
 
 27
 Much of the Supreme Court's purpose in this area of law has been to provide guidance to law enforcement officers. Roberson, 108 S.Ct. at 2097 (quoting Miranda v. Arizona, 384 U.S. at 441-42). The majority opinion appears to teach law enforcement officers the following lesson. Have the accused ask a question. Do not answer it then. Wait for an opportune time, perhaps when the "inherent pressures of custodial interrogation," Roberson, 108 S.Ct. at 2100, are at their maximum, then respond to the earlier asked question. That allows the investigating officer to save a putative defendant's question and use it as a wild card to convert the officer's initiation of a conversation into the putative defendant's initiation.
 
 
 28
 That, in my view, eviscerates the rule of Edwards and I dissent. I would rule that Edwards requires that the statements obtained from Hoskins not be admitted. Because I would grant Hoskins' petition for habeas corpus on the merits, I would consider whether the magistrate erred when he held that the petition was not an abuse of the writ. I would hold that there was not an abuse of the writ. Miller v. Bordenkircher, 764 F.2d 245, 248 (4th Cir.1985), indicates that a trial court's decision regarding abuse of the writ is an exercise of discretion. I find no abuse of discretion here and consequently find no abuse of the writ. I would affirm the magistrate's grant of the great writ.
 
 
 29
 I find one additional fault with the majority opinion. It concludes that Hoskins initiated the conversation and therefore reverses the grant of the writ. The majority glides too swiftly over a necessary step.
 
 
 30
 A conclusion that Hoskins initiated the conversations does not mean that ipso facto the statements were properly admitted. That conclusion simply means that the Edwards per se rule does not apply. The prosecution next assumes the burden of showing that Hoskins knowingly and intelligently waived the right to counsel that he invoked. Bradshaw, 462 U.S. at 1048 (Powell, J., concurring); McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir.1987). The majority simply indicates that the state met the burden. See supra at 8. However, the majority must realize that it is in this habeas case making the inquiry of the knowing and intelligent waiver of the right to counsel in the first instance. The magistrate concluded that Edwards applied and did not reach the waiver of counsel issue.
 
 
 
 [1]
 This habeas corpus proceeding was determined by the magistrate pursuant to 28 U.S.C. Sec. 636(c)
 
 
 [2]
 This is the third time we have heard an appeal on habeas corpus petitions submitted by Hoskins. District courts denied relief on Hoskins' first two petitions, and we affirmed those judgments. Neither of those cases, however, involved the alleged denial of sixth amendment right to counsel
 
 
 [3]
 Because we reject Hoskins' petition for habeas corpus on the merits, it is unnecessary for us to consider whether the magistrate erred in holding that the petition was not an abuse of the writ
 
 
 [1]
 Since determination of who initiated a conversation is a mixed question of law and fact, the presumption, under 28 U.S.C. Sec. 2254(d), that a state court's factual findings are presumed correct when a federal court considers a petition for habeas corpus does not apply. Townsend v. Sain, 372 U.S. 293, 309 n. 6 (1963). In the present case, the state court judge had ruled at a suppression hearing held prior to the criminal trial that Hoskins' statements were initiated by him so that no sixth amendment violation occurred